**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

**BREANNA BACKFISCH**,

      Plaintiff,

vs.

**PENSKE TRUCK LEASING CO., L.P.**, a
Delaware Limited Liability Company *d/b/a* Penske
Truck Rental

Serve Registered Agent:
CSC-Lawyers Incorporating Service Company
221 Bolivar St.
Jefferson City, MO 65101

and

**TRUCKING TIMES, INC.**, an Illinois
Corporation,

Serve:  Nigina A. Durmanova
        730 E. St. Charles Rd. Suite 102
        Lombard, IL 60148

and

**FEDERAL EXPRESS CORPORATION**, a
Delaware Corporation,

Serve:  CT Corporation System, Registered Agent
        120 S. Central Avenue
        Clayton, MO 63105

and

**TOSHTEMIR BAHROMOV**
6801 Bay Pkwy, 16F
Brooklyn, NY 11204

      Defendants.

1

## COMPLAINT

**COMES NOW** Breanna Backfisch ("**Backfisch**" or "**Plaintiff**") by and through her undersigned attorney, and for her causes of action against Penske Truck Leasing Co., LP, ("**Penske**"), Trucking Times, Inc., ("**Trucking Times**"), Federal Express Corporation ("**Fed Ex**"), and Toshtemir Bahromov ("**Bahromov**"), collectively, "**Defendants**," alleges as follows:

## PARTIES

1. Plaintiff Breanna Backfisch is a citizen of and domiciled in the State of Missouri.

2. At all times relevant, Defendant Penske Truck Leasing Co., L.P., was a commercial trucking company and a Delaware Limited Partnership duly registered in the state of Missouri and engaged in the business of transporting goods in interstate commerce and transacting business in the state of Missouri.

3. As a result of its formation as a business entity in Delaware, Defendant Penske is a citizen of the State of Delaware.

4. Defendant Penske's principal place of business is Reading, Pennsylvania. Because its principal place of business is in Pennsylvania, Defendant Penske is also a citizen of the State of Pennsylvania.

5. At all times relevant, Defendant Trucking Times, Inc., was a commercial trucking company and an Illinois Corporation engaged in the business of transporting goods in interstate commerce and transacting business in the State of Missouri.

6. Defendant Trucking Times' principal place of business is in Lombard, Illinois. Because both its formation and its principal place of business are in Illinois, Defendant Trucking Times is a citizen of the State of Illinois.

7. At all times relevant, Defendant Federal Express Corporation was a commercial trucking company and a Delaware Limited Partnership duly registered in the state of Missouri and

2

engaged in the business of transporting goods in interstate commerce and transacting business in the State of Missouri.

8.      As a result of its formation as a business entity in Delaware, Defendant Fed Ex is a citizen of the State of Delaware.

9.      Defendant Fed Ex's principal place of business is Memphis, Tennessee. Because its principal place of business is in Tennessee, Defendant Fed Ex is also a citizen of the State of Tennessee.

10.     On information and belief, at all times relevant herein, Defendant Bahromov was and is a citizen of and domiciled in the State of New York.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over the parties pursuant to 28 U.S.C. §1332 because there is complete diversity of citizenship between Plaintiff and each of the Defendants.

12.     This Court has personal jurisdiction over Defendant Bahromov under the Missouri long arm statute because Defendant Bahromov committed a tortious act within the state of Missouri (MO. REV. STAT. §506.500(3)).

13.     This Court has personal jurisdiction over Defendant Penske under the Missouri long arm statute because it committed a tortious act within the state through its agent, Defendant Bahromov (MO. REV. STAT. §506.500(3)) and because it transacts business within the state of Missouri (MO. REV. STAT. §506.500(1)).

14.     This Court has personal jurisdiction over Defendant Trucking Times under the Missouri long arm statute because it committed a tortious act within the state through its agent, Defendant Bahromov (MO. REV. STAT. §506.500(3)) and because it transacts business within the state of Missouri (MO. REV. STAT. §506.500(1)).

3

15. This Court has personal jurisdiction over Defendant Fed Ex under the Missouri long arm statute because it committed a tortious act within the state through its agent, Defendant Bahromov (MO. REV. STAT. §506.500(3)) and because it transacts business within the state of Missouri (MO. REV. STAT. §506.500(1)).

16. Venue is proper in this Court because the incident in which Plaintiff was injured occurred in Ste. Genevieve County, Missouri, which is within the geographical jurisdiction of the United States District Court Eastern District of Missouri, Southeastern Division.

**COMMON COUNT**

17. At all times relevant, Defendant Penske was operating as a "private" interstate commercial motor carrier.

18. At all times relevant, Defendant Trucking Times was operating as a "for hire" interstate commercial motor carrier.

19. At all times relevant, Defendant Fed Ex was operating as a "for hire" interstate commercial motor carrier.

20. At all times relevant and, particularly, at the time of this crash, Defendant Penske, Defendant Trucking Times, and Defendant Fed Ex were acting individually and through their drivers, agents, servants, and/or employees, including Defendant Bahromov, each of whom were acting within the course and scope of their employment or agency with Defendant Penske, Defendant Trucking Times, and Defendant Fed Ex.

21. At all times relevant and, particularly, at the time of this crash, Defendant Bahromov was operating a 2019 Freightliner in the course and scope of his employment or agency with Defendant Penske, Defendant Trucking Times, and/or Defendant Fed Ex.

22. At all times relevant and, particularly, at the time of this crash, Defendant Bahromov was operating the 2019 Freightliner in furtherance of the business interests of

4

Defendant Penske, Defendant Trucking Times, and/or Defendant Fed Ex.

23. Defendant Penske, Defendant Trucking Times, and Defendant Fed Ex, at all relevant times, were subject to and required to abide by the rules and regulations contained and set forth in Title 49, Code of Federal Regulations (Federal Motor Carrier Safety Regulations).

24. Defendant Bahromov, at all relevant times, was subject to and required to abide by the rules and regulations contained and set forth in Title 49, Code of Federal Regulations (Federal Motor Carrier Safety Regulations).

25. At all times herein mentioned Defendant Penske, Defendant Trucking Times and/or Defendant Fed Ex by or through their agents, servants, and/or employees, including Defendant Bahromov, owned, leased, controlled, and/or operated the 2019 Freightliner that was involved in the crash which is the subject of this litigation.

26. In its relevant parts, the Federal Motor Carrier Safety Regulations define "Motor Carrier" as a for-hire motor carrier or a private motor carrier; including a motor carrier's agents, officers, and representatives, as well as employees responsible for hiring, supervising, training, assigning, or dispatching of drivers and employees concerned with the installation, inspection, and maintenance of motor vehicle equipment and/or accessories; this definition includes the term "employer." 49 C.F.R. §390.5.

27. At all times relevant, Defendant Penske, Defendant Trucking Times, and Defendant Fed Ex were "Motor Carriers" as that term is defined by the Federal Motor Carrier Safety Regulations.

28. In its relevant parts, the Motor Carrier Safety Regulations define an "Employee" as any individual, other than an employer, who is employed by an employer and who, in the course of his or her employment directly, affects commercial motor vehicle safety. "Employee" includes

5

a driver of a commercial motor vehicle (including an independent contractor while in the course of operating a commercial motor vehicle). 49 C.F.R. §390.5.

29.     At all times relevant, Defendant Bahromov was the driver of the aforementioned 2019 Freightliner a commercial motor vehicle, and therefore, an "employee," as defined by the Motor Carrier Safety Regulations.

30.     In its relevant parts, the Motor Carrier Safety Regulations define "Motor Vehicle" as any vehicle, machine, tractor, trailer, or semi-trailer propelled or drawn by mechanical power and used upon the highways in the transportation of passengers or property, or any combination thereof determined by the Federal Motor Carrier Safety Administration. 49 C.F.R. §390.5.

31.     At all times relevant, the 2019 Freightliner operated by Defendant Bahromov was a "motor vehicle," as defined by the Motor Carrier Safety Regulations.

32.     At all times relevant, Interstate 55 in the County of Ste. Genevieve, State of Missouri, was an open and public roadway.

33.     On December 16, 2019, Defendant Penske's name and DOT number (327574) were displayed on the commercial motor vehicle being driven by Defendant Bahromov at the time of the collision further described herein.

34.     On December 16, 2019, Defendant Trucking Times' name and DOT number (3048488) were displayed on the commercial motor vehicle being driven by Defendant Bahromov at the time of the collision further described herein.

35.     On December 16, 2019, Defendant Fed Ex's name and DOT number (86876) were displayed on the commercial motor vehicle being driven by Defendant Bahromov at the time of the collision further described herein.

36.     At approximately 9:55 a.m. on December 16, 2019, Plaintiff was a properly restrained passenger in a 2016 Ford Escape traveling north on Interstate 55 near its intersection with Bridge A1991 in Ste. Genevieve County, Missouri.

37.     At the same place and time Defendant Bahromov was operating the 2019 Freightliner and traveling north on Interstate 55 in Ste. Genevieve County, Missouri.

38.     Defendant Bahromov was operating the 2019 Freightliner at a speed which was too fast for the icy conditions of the roadway.

39.     Defendant Bahromov lost control of his vehicle which struck the Ford Escape in the rear end causing it to travel into the right-hand lane where it struck a third vehicle which had also been traveling north on Interstate 55.

40.     Defendant Bahromov's operation of his commercial motor vehicle in the manner aforementioned was careless, reckless, and negligent and exhibited complete disregard for the safety of Plaintiff and other motorists on the public roadway.

41.     At the aforementioned time and place, Defendant Bahromov was operating the 2019 Freightliner pursuant to Defendant Penske's motor carrier DOT operating authority.

42.     At the aforementioned time and place, Defendant Bahromov was operating the 2019 Freightliner pursuant to Defendant Trucking Times' motor carrier DOT operating authority.

43.     At the aforementioned time and place, Defendant Bahromov was operating the 2019 Freightliner pursuant to Defendant Fed Ex's motor carrier DOT operating authority.

44.     At all relevant times, Defendant Bahromov was acting within the scope and course of his employment or agency with Defendant Penske.

45.     At all relevant times, Defendant Bahromov was acting within the scope and course of his employment or agency with Defendant Fed Ex.

7

46.     At all relevant times, Defendant Bahromov was acting within the scope and course of his employment or agency with Defendant Trucking Times.

47.     The negligence of Defendant Penske and the negligence of its drivers, agents, servants, and employees, including Defendant Bahromov, as described herein, directly, and proximately, caused or contributed to cause injury to Plaintiff as described in greater detail herein.

48.     The negligence of Defendant Fed Ex and the negligence of its drivers, agents, servants, and employees, including Defendant Bahromov, as described herein, directly, and proximately, caused or contributed to cause injury to Plaintiff as described in greater detail herein.

49.     The negligence of Defendant Trucking Times and the negligence of its drivers, agents, servants, and employees, including Defendant Bahromov, as described herein, directly, and proximately, caused or contributed to cause injury to Plaintiff as described in greater detail herein.

50.     As a direct and proximate result of this crash and the direct and proximate result of the negligence of Defendants Penske, Defendant Trucking Times, and Defendant Fed Ex and their agents, servants, and employees, including Defendant Bahromov, Plaintiff sustained severe injuries to her head, back, neck, shoulder, arm and torso.

51.     All of the injuries suffered by Plaintiff are permanent and progressive.

52.     As a direct and proximate result of this crash and the direct and proximate result of the negligence of Defendants Penske, Defendant Trucking Times, and Defendant Fed Ex and their agents, servants, and employees, including Defendant Bahromov, Plaintiff has experienced pain, suffering, post-concussion syndrome, migraine headaches, dizziness, sleep disturbance, confusion, fatigue, anxiety, depression, and other emotional distress, and has been deprived of the enjoyment of life. Plaintiff is likely to experience all of such damages in the future.

53.    As a direct and proximate result of this crash and the direct and proximate result of the negligence of Defendant Penske, Defendant Trucking Times, and Defendant Fed Ex and their agents, servants, and employees, including Defendant Bahromov, Plaintiff has incurred medical expenses related to the treatment of injuries sustained in the crash and is likely to incur such expenses in the future.

54.    As a direct and proximate result of this crash and the direct and proximate result of the negligence of Defendant Penske, Defendant Trucking Times, and Defendant Fed Ex and their agents, servants, and employees, including Defendant Bahromov, Plaintiff is now at an increased risk of incurring future medical treatment and expenses.

55.    As a direct and proximate result of this crash and the direct and proximate result of the negligence of Defendant Penske, Defendant Trucking Times, and Defendant Fed Ex and their agents, servants, and employees, including Defendant Bahromov, Plaintiff has lost wages and suffered an impairment to her ability to earn income and is reasonably likely to suffer future lost wages and future loss of earning capacity.

<u>**COUNT I**</u>
<u>**DAMAGES FOR BODILY INJURY BASED ON THE NEGLIGENCE OF DEFENDANT BAHROMOV**</u>

**COMES NOW** Plaintiff Breanna Backfisch, by and through her attorney, and to the extent not inconsistent with this Count, repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above as if they were set forth herein at length against each of the Defendants and further states:

56.    At all times relevant, Defendant Bahromov was required to obey the Federal Motor Carrier Safety Regulations and safe trucking industry standards while operating a commercial motor vehicle.

9

57.     At all times relevant, Defendant Bahromov was required to obey Missouri's statutory Rules of the Road while operating a commercial motor vehicle (MO. REV. STAT. §304.014) and to operate his vehicle with the highest degree of care.

58.     Upon information and belief, at the time of this crash Defendant Bahromov's acts and or omissions caused or contributed to cause the crash in which Plaintiff was injured and Defendant Bahromov breached the duties of care owed to Plaintiff in one or more of the following ways:

(a) Driving too fast for conditions in violation of MO. REV. STAT. Chapter 304, (commonly referred to as Missouri's statutory rules of the road);

(b) Failing to reduce speed to avoid a collision in violation of MO. REV. STAT. Chapter 304, (commonly referred to as Missouri's statutory rules of the road);

(c) Failing to keep a proper lookout;

(d) Failing to reduce speed to avoid a collision;

(e) Failing to operate the 2019 Freightliner in a careful and prudent manner;

(f) Operating a commercial motor vehicle without adequate training and experience;

(g) Driving without a valid CDL;

(h) Operating a commercial motor vehicle when not medically or otherwise qualified under the Federal Motor Vehicle Safety Standards;

(i) Driving a commercial motor vehicle too fast for the conditions in violation of FMCSR 392.14;

(j) Driving while tired and/or fatigued in violation of the Motor Vehicle Safety Standards;

(k) Driving while under the unsafe side-effects of prescription medication;

(l) Driving while under the influence of alcohol or recreational drugs;

(m) Using a phone or another electronic device while driving;

(n) Failing to properly secure the load he was hauling;

(o) Failing to stop his vehicle, slacken his speed, swerve, or sound a warning in an attempt to avoid colliding with the vehicle in which Plaintiff was a passenger, when he could and should have done so in exercising the highest degree of care.

59.     At least one of the negligent acts or omissions by Defendant Bahromov as described in the above paragraphs was a direct and proximate cause of the crash in question and the resulting severe injuries to Plaintiff.

60.     Defendant Bahromov knew or should have known that his conduct as described herein created a high degree of probability of injury given the icy road and poor weather conditions.

61.     The operation of the 2019 Freightliner and the manner in which it was operated by Defendant Bahromov on a public roadway which he knew was icy and in adverse weather conditions that included sleet and freezing temperatures, was willful, wanton, and reckless, and demonstrates complete indifference and conscious disregard for the safety of the motoring public, including Plaintiff.

62.     At the time of the collision, Defendant Bahromov was operating the 2019 Freightliner in the course and scope of his employment, agency, and/or joint venture with Defendant Penske.

63.     At the time of the collision, Defendant Bahromov was operating the 2019 Freightliner in the course and scope of his employment, agency, and/or joint venture with Defendant Fed Ex.

64.     At the time of the collision, Defendant Bahromov was operating the 2019 Freightliner in the course and scope of his employment, agency, and/or joint venture with Defendant Trucking Times.

65.     At the time of the collision, Defendant Bahromov was operating the 2019 Freightliner pursuant to Defendant Penske's operating authority granted by the United States government.

66.     At the time of the collision, Defendant Bahromov was operating the 2019 Freightliner pursuant to Defendant Fed Ex's operating authority granted by the United States government.

67.     At the time of the collision, Defendant Bahromov was operating the 2019 Freightliner pursuant to Defendant Trucking Times' operating authority granted by the United States government.

68.     At all times relevant, Defendant Penske had the right to control the manner in which Defendant Bahromov transported the load and operated the 2019 Freightliner, including the right to control the details of his operations, schedule, and compensation.

69.     At all times relevant, Defendant Fed Ex had the right to control the manner in which Defendant Bahromov transported the load and operated the 2019 Freightliner, including the right to control the details of his operations, schedule, and compensation.

70.     At all times relevant, Defendant Trucking Times had the right to control the manner in which Defendant Bahromov transported the load and operated the 2019 Freightliner, including the right to control the details of his operations, schedule, and compensation

71.     Defendant Penske, Defendant Trucking Times, and Defendant Fed Ex are vicariously liable for the negligent actions of Defendant Bahromov under the doctrines of *respondeat superior*, agency, joint venture, and/or statutory employment pursuant to 49 CFR 390.5.

**WHEREFORE** Plaintiff Breanna Backfisch prays for judgment on Count I against Defendant Penske Truck Leasing Co., L.P., Defendant Trucking Times, Inc., Defendant Federal Express Corporation, and Defendant Toshtemir Bahromov, jointly and severally for compensatory damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00) and for punitive damages in a sum sufficient to punish the Defendants and deter future misconduct,

12

taxable costs, prejudgment and post-judgment interest and for such other relief this Court deems just and proper under the circumstances.

## COUNT II

## DAMAGES FOR BODILY INJURY BASED ON THE INDEPENDENT NEGLIGENCE OF DEFENDANT PENSKE TRUCK LEASING CO., L.P.

**COMES NOW** Plaintiff Breanna Backfisch, by and through her attorney, and to the extent not inconsistent with this Count, repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above as if they were set forth herein at length against Defendant Penske Truck Leasing Co., L.P., and further states:

72.     At all times relevant, Defendant Penske was operating as an interstate motor carrier pursuant to authority granted to it by the U.S. Department of Transportation.

73.     By virtue of its familiarity with the trucking industry, Defendant Penske has been, or should have been, aware of the existence of the FMCSR.

74.     As an interstate motor carrier, Defendant Penske has a duty to follow and comply with the FMCSR including the provisions of Parts 385, 390, 391, 392, 393, 395 and 396.

75.     Some of the duties Defendant Penske owed to Plaintiff under the FMCSR are the duties to act reasonably in hiring, instructing, training, supervising, and retaining its drivers and other employees and agents, including Defendant Bahromov; and the duties to promulgate and enforce policies, procedures, and rules to ensure that its drivers and vehicles are reasonably safe; and to exercise reasonable care in entrusting its vehicles and equipment to responsible, competent and qualified drivers. Specifically, as an interstate motor carrier, Defendant Penske has a duty to follow and comply with the Federal Motor Carrier Safety Regulations including, but are not limited to, the following:

     a.   Defendant Penske had an independent duty to require observance by its drivers of

any duty or prohibition imposed upon the drivers by the Federal Motor Carrier Safety Regulations. 49 C.F.R. §390.11.

b.  Defendant Penske had a duty to not require or permit a driver, including Defendant Bahromov, to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. 49 C.F.R. §392.3.

c.  Defendant Penske had a duty to not allow or permit a driver, including Defendant Bahromov, to operate a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle. 49 C.F.R. §391.11.

d.  Defendant Penske had an independent duty not to aid, abet, encourage or require any of its employees to violate the safety regulations contained within Chapter 390. 490 C.F.R. §390.13.

e.  Defendant Penske had an independent duty to prohibit its employees from driving a commercial vehicle unless the employee had first completed and furnished to Defendant Penske an application for employment that meets the requirements as set forth in 49 C.F.R. §391.21(b).

f.  Defendant Penske had an independent duty to make investigations and inquiries with respect to each driver it employs and to do so in the manner prescribed in 49 C.F.R. §391.23.

g.  Defendant Penske had an independent duty to obtain the motor vehicle record of every driver it employs, including Defendant Bahromov, at least once every twelve months to determine whether that driver continued to meet the minimum requirements for safe driving or is disqualified to drive a commercial motor vehicle.

49 C.F.R. §391.25.

h. Defendant Penske had an independent duty to require each of its drivers, including Defendant Bahromov, to furnish it with a list of all violations of motor vehicle traffic laws and ordinances of which he/she has been convicted in the preceding 12 months. 49 C.F.R. §391.27.

i. Defendant Penske had an independent duty to prohibit its employees, including Defendant Bahromov, from driving until the driver had successfully completed a road test and been issued a certificate of driver's road test. 40. C.F.R. §391.31.

j. Defendant Penske had an independent duty to ensure that its drivers, including Defendant Bahromov, were physically qualified to operate a commercial motor vehicle and that its drivers had undergone the necessary examinations in the required timeframes as set forth within the Federal Motor Carrier Safety Regulations. 40 C.F.R. §391 – Subpart E; and

k. Defendant Penske had an independent duty to inspect, repair, and maintain, all of the motor vehicles subject to its control, including the motor vehicle operated by Defendant Bahromov on the day of the aforementioned crash, and to ensure that the motor vehicle and all of its parts and accessories were in proper operating condition at all times, including at the time of the aforementioned crash. 40 C.F.R. §396.3.

76. Defendant Penske breached one or more of these duties by, among other things, selecting a driver who was incompetent and unqualified to operate a commercial vehicle and failing to have adequate policies in place to monitor its drivers to be sure they were operating commercial motor vehicles with the highest degree of care, failing to appropriately censure drivers who fail to drive with the highest degree of care and failing to exercise reasonable care in entrusting

its commercial motor vehicles to responsible, competent, and qualified drivers.

77. Moreover, it is a customary standard in the motor carrier industry to have in place an adequate safety program administered by competent and adequately trained safety personnel to ensure that a motor carrier and its drivers are adhering to the FMCSR.

78. At all times prior to the aforementioned collision, Defendant Penske failed to have in place an adequate safety program.

79. As a result of its inadequate and/or non-existent safety program, Defendant Penske permitted its drivers, including Defendant Bahromov, to violate numerous provisions of the FMCSR.

80. Defendant Penske breached the duties of care it owed to Plaintiff, and to other motorists by its numerous violations of the FMCSR and its failure to have in place an adequate safety program and thereby created a danger to the health, welfare, and safety of the motoring public, including Plaintiff by enabling Defendant Bahromov to operate a commercial motor vehicle when he was not qualified to do so.

81. As a direct and proximate result of the independent negligence of Defendant Penske, Plaintiff was injured, sustained damages, and will continue to be damaged in the manners previously described herein.

82. Defendant Penske knew or had information from which it, in the exercise of ordinary care, could have known that such conduct as described herein created a high degree of probability of injury to the motoring public including Plaintiff.

83. The conduct of Defendant Penske as described herein, specifically including violations of Missouri state law and the various Federal Motor Carrier Safety Regulations, was willful, wanton, and reckless, and demonstrates complete indifference and conscious disregard for the safety of the motoring public, including Plaintiff.

**WHEREFORE** Plaintiff Breanna Backfisch prays for judgment on Count II in her favor and against Defendant Penske Truck Leasing Co., L.P., for compensatory damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00) and for punitive damages in a sum sufficient to punish this Defendant and deter future misconduct and for taxable costs, pre-judgment and post-judgment interest and for such other relief this Court deems just and proper under the circumstances.

<u>**COUNT III**</u>
<u>**DAMAGES FOR BODILY INJURY BASED ON THE INDEPENDENT NEGLIGENCE OF DEFENDANT FEDERAL EXPRESS CORPORATION**</u>

**COMES NOW** Plaintiff Breanna Backfisch, by and through her attorney, and to the extent not inconsistent with this Count, repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above as if they were set forth herein at length against Defendant Federal Express Corporation and further states:

84.     At all times relevant, Defendant Fed Ex was operating as an interstate motor carrier pursuant to authority granted to it by the U.S. Department of Transportation.

85.     By virtue of its familiarity with the trucking industry, Defendant Fed Ex has been, or should have been, aware of the existence of the FMCSR.

86.     As an interstate motor carrier, Defendant Fed Ex has a duty to follow and comply with the FMCSR including the provisions of Parts 385, 390, 391, 392, 393, 395 and 396.

87.     Some of the duties Defendant Fed Ex owed to Plaintiff under the FMCSR are the duties to act reasonably in hiring, instructing, training, supervising, and retaining its drivers and other employees and agents, including Defendant Bahromov; and the duties to promulgate and enforce policies, procedures, and rules to ensure that its drivers and vehicles are reasonably safe; and to exercise reasonable care in entrusting its vehicles and equipment to responsible, competent

17

and qualified drivers. Specifically, as an interstate motor carrier, Defendant Fed Ex has a duty to follow and comply with the Federal Motor Carrier Safety Regulations including, but are not limited to, the following:

a. Defendant Fed Ex had an independent duty to require observance by its drivers of any duty or prohibition imposed upon the drivers by the Federal Motor Carrier Safety Regulations. 49 C.F.R. §390.11.

b. Defendant Penske had a duty to not require or permit a driver, including Defendant Bahromov, to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. 49 C.F.R. §392.3.

c. Defendant Fed Ex had a duty to not allow or permit a driver, including Defendant Bahromov, to operate a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle. 49 C.F.R. §391.11.

d. Defendant Fed Ex had an independent duty not to aid, abet, encourage or require any of its employees to violate the safety regulations contained within Chapter 390. 490 C.F.R. §390.13.

e. Defendant Fed Ex had an independent duty to prohibit its employees from driving a commercial vehicle unless the employee had first completed and furnished to Defendant Penske an application for employment that meets the requirements as set forth in 49 C.F.R. §391.21(b).

f. Defendant Fed Ex had an independent duty to make investigations and inquiries with respect to each driver it employs and to do so in the manner prescribed in 49 C.F.R. §391.23.

18

g. Defendant Fed Ex had an independent duty to obtain the motor vehicle record of every driver it employs, including Defendant Bahromov, at least once every twelve months to determine whether that driver continued to meet the minimum requirements for safe driving or is disqualified to drive a commercial motor vehicle. 49 C.F.R. §391.25.

h. Defendant Fed Ex had an independent duty to require each of its drivers, including Defendant Bahromov, to furnish it with a list of all violations of motor vehicle traffic laws and ordinances of which he/she has been convicted in the preceding 12 months. 49 C.F.R. §391.27.

i. Defendant Fed Ex had an independent duty to prohibit its employees, including Defendant Bahromov, from driving until the driver had successfully completed a road test and been issued a certificate of driver's road test. 40. C.F.R. §391.31.

j. Defendant Fed Ex had an independent duty to ensure that its drivers, including Defendant Bahromov, were physically qualified to operate a commercial motor vehicle and that its drivers had undergone the necessary examinations in the required timeframes as set forth within the Federal Motor Carrier Safety Regulations. 40 C.F.R. §391 – Subpart E; and

k. Defendant Fed Ex had an independent duty to inspect, repair, and maintain, all of the motor vehicles subject to its control, including the motor vehicle operated by Defendant Bahromov on the day of the aforementioned crash, and to ensure that the motor vehicle and all of its parts and accessories were in proper operating condition at all times, including at the time of the aforementioned crash. 40 C.F.R. §396.3.

88. Defendant Fed Ex breached one or more of these duties by, among other things,

19

selecting a driver who was incompetent and unqualified to operate a commercial vehicle and failing to have adequate policies in place to monitor its drivers to be sure they were operating commercial motor vehicles with the highest degree of care, failing to appropriately censure drivers who fail to drive with the highest degree of care and failing to exercise reasonable care in entrusting its commercial motor vehicles to responsible, competent, and qualified drivers.

89. Moreover, it is a customary standard in the motor carrier industry to have in place an adequate safety program administered by competent and adequately trained safety personnel to ensure that a motor carrier and its drivers are adhering to the FMCSR.

90. At all times prior to the aforementioned collision, Defendant Fed Ex failed to have in place an adequate safety program.

91. As a result of its inadequate and/or non-existent safety program, Defendant Fed Ex permitted its drivers, including Defendant Bahromov, to violate numerous provisions of the FMCSR.

92. Defendant Fed Ex breached the duties of care it owed to Plaintiff, and to other motorists by its numerous violations of the FMCSR and its failure to have in place an adequate safety program and thereby created a danger to the health, welfare, and safety of the motoring public, including Plaintiff by enabling Defendant Bahromov to operate a commercial motor vehicle when he was not qualified to do so.

93. As a direct and proximate result of the independent negligence of Defendant Fed Ex, Plaintiff was injured, sustained damages, and will continue to be damaged in the manners previously described herein.

94. Defendant Fed Ex knew or had information from which it, in the exercise of ordinary care, could have known that such conduct as described herein created a high degree of probability of injury to the motoring public including Plaintiff.

95.     The conduct of Defendant Fed Ex as described herein, specifically including violations of Missouri state law and the various Federal Motor Carrier Safety Regulations was willful, wanton, and reckless, and demonstrates complete indifference and conscious disregard for the safety of the motoring public, including Plaintiff.

**WHEREFORE** Plaintiff Breanna Backfisch prays for judgment on Count III in her favor and against Defendant Federal Express Corporation for compensatory damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00) and for punitive damages in a sum sufficient to punish this Defendant and deter future misconduct and for taxable costs, pre-judgment and post-judgment interest, and for such other relief this Court deems just and proper under the circumstances.

## COUNT IV
### DAMAGES FOR BODILY INJURY BASED ON THE INDEPENDENT NEGLIGENCE OF DEFENDANT TRUCKING TIMES, INC.

**COMES NOW** Plaintiff Breanna Backfisch, by and through her attorney, and to the extent not inconsistent with this Count, repeats, incorporates, and re-alleges each and every paragraph and sub-paragraph set forth above as if they were set forth herein at length against Defendant Trucking Times, Inc., and further states:

96.     At all times relevant, Defendant Trucking Times was operating as an interstate motor carrier pursuant to authority granted to it by the U.S. Department of Transportation.

97.     By virtue of its familiarity with the trucking industry, Trucking Times has been, or should have been, aware of the existence of the FMCSR.

98.     As an interstate motor carrier, Defendant Trucking Times has a duty to follow and comply with the FMCSR including the provisions of Parts 385, 390, 391, 392, 393, 395 and 396.

21

99.     Some of the duties Defendant Trucking Times owed to Plaintiff under the FMCSR are the duties to act reasonably in hiring, instructing, training, supervising, and retaining its drivers and other employees and agents, including Defendant Bahromov; and the duties to promulgate and enforce policies, procedures, and rules to ensure that its drivers and vehicles are reasonably safe; and to exercise reasonable care in entrusting its vehicles and equipment to responsible, competent and qualified drivers. Specifically, as an interstate motor carrier, Defendant Trucking Times has a duty to follow and comply with the Federal Motor Carrier Safety Regulations including, but are not limited to, the following:

a.  Defendant Trucking Times had an independent duty to require observance by its drivers of any duty or prohibition imposed upon the drivers by the Federal Motor Carrier Safety Regulations. 49 C.F.R. §390.11.

b.  Defendant Trucking Times had a duty to not require or permit a driver, including Defendant Bahromov, to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. 49 C.F.R. §392.3.

c.  Defendant Trucking Times had a duty to not allow or permit a driver, including Defendant Bahromov, to operate a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle. 49 C.F.R. §391.11.

d.  Defendant Trucking Times had an independent duty not to aid, abet, encourage, or require any of its employees to violate the safety regulations contained within Chapter 390. 490 C.F.R. §390.13.

e.  Defendant Trucking Times had an independent duty to prohibit its employees from driving a commercial vehicle unless the employee had first completed and

furnished to Defendant Trucking Times an application for employment that meets the requirements as set forth in 49 C.F.R. §391.21(b).

f.  Defendant Trucking Times had an independent duty to make investigations and inquiries with respect to each driver it employs and to do so in the manner prescribed in 49 C.F.R. §391.23.

g.  Defendant Trucking Times had an independent duty to obtain the motor vehicle record of every driver it employs, including Defendant Bahromov, at least once every twelve months to determine whether that driver continued to meet the minimum requirements for safe driving or is disqualified to drive a commercial motor vehicle. 49 C.F.R. §391.25.

h.  Defendant Trucking Times had an independent duty to require each of its drivers, including Defendant Bahromov, to furnish it with a list of all violations of motor vehicle traffic laws and ordinances of which he/she has been convicted in the preceding 12 months. 49 C.F.R. §391.27.

i.  Defendant Trucking Times had an independent duty to prohibit its employees, including Defendant Bahromov, from driving until the driver had successfully completed a road test and been issued a certificate of driver's road test. 40. C.F.R. §391.31.

j.  Defendant Trucking Times had an independent duty to ensure that its drivers, including Defendant Bahromov, were physically qualified to operate a commercial motor vehicle and that its drivers had undergone the necessary examinations in the required timeframes as set forth within the Federal Motor Carrier Safety Regulations. 40 C.F.R. §391 – Subpart E; and

23

k. Defendant Trucking Times had an independent duty to inspect, repair, and maintain all of the motor vehicles subject to its control, including the motor vehicle operated by Defendant Bahromov on the day of the aforementioned crash, and to ensure that the motor vehicle and all of its parts and accessories were in proper operating condition at all times, including at the time of the aforementioned crash. 40 C.F.R. §396.3.

100. Defendant Trucking Times breached one or more of these duties by, among other things, selecting a driver who was incompetent and unqualified to operate a commercial vehicle and failing to have adequate policies in place to monitor its drivers to be sure they were operating commercial motor vehicles with the highest degree of care, failing to appropriately censure drivers who fail to drive with the highest degree of care, and failing to exercise reasonable care in entrusting its commercial motor vehicles to responsible, competent and qualified drivers.

101. Moreover, it is a customary standard in the motor carrier industry to have in place an adequate safety program administered by competent and adequately trained safety personnel to ensure that a motor carrier and its drivers are adhering to the FMCSR.

102. At all times prior to the aforementioned collision, Defendant Trucking Times failed to have in place an adequate safety program.

103. As a result of its inadequate and/or non-existent safety program, Defendant Trucking Times permitted its drivers, including Defendant Bahromov, to violate numerous provisions of the FMCSR.

104. Defendant Trucking Times breached the duties of care it owed to Plaintiff, and to other motorists by its numerous violations of the FMCSR and its failure to have in place an adequate safety program and thereby created a danger to the health, welfare, and safety of the

24

motoring public, including Plaintiff by enabling Defendant Bahromov to operate a commercial motor vehicle when he was not qualified to do so.

105.    As a direct and proximate result of the independent negligence of Defendant Trucking Times, Plaintiff was injured, sustained damages and will continue to be damaged in the manners previously described herein.

106.    Defendant Trucking Times knew or had information from which it, in the exercise of ordinary care, could have known that such conduct as described herein created a high degree of probability of injury to the motoring public including Plaintiff.

107.    The conduct of Defendant Trucking Times as described herein, specifically including violations of Missouri state law and the various Federal Motor Carrier Safety Regulations was willful, wanton, and reckless, and demonstrates complete indifference and conscious disregard for the safety of the motoring public, including Plaintiff.

**WHEREFORE** Plaintiff Breanna Backfisch prays for judgment on Count IV in her favor and against Defendant Trucking Times, Inc., for compensatory damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00) and for punitive damages in a sum sufficient to punish this Defendant and deter future misconduct and for taxable costs, pre-judgment and post-judgment interest, and for such other relief this Court deems just and proper under the circumstances.

Respectfully submitted,

**COOK BARKETT, PONDER & WOLZ, LC**

By:    */s/ Jacob D. Lawrence*
        Jacob D. Lawrence, #72556(MO)
        1610 North Kingshighway, Suite 201
        Cape Girardeau, MO 63701
        Phone: 573-335-6651 Fax: 573-279-0070
        E-mail: jlawrence@cbpw-law.com
        **ATTORNEY FOR PLAINTIFF**

25